## Thomas Leek v. The People of the State of Illinois, ex rel. Grace Tary.

### Gen. No. 4,335.

1. LEADING QUESTIONS—*when will not reverse.* The fact that leading questions were permitted to be asked of the prosecuting witness will not reverse where no harm appears to have been done.

2. FAILURE TO ANSWER—*when not ground for reversal.* Where a witness has failed to answer many questions put upon cross-examination, the defendant cannot complain where answers were not insisted upon and no objections or exceptions were preserved.

3. EVIDENCE—*what competent in prosecution for bastardy.* Where the defendant has shown that a man other than the accused had given to the prosecuting witness a suit of underwear, it is competent for the People to show that such man had been the recipient of kindness and hospitality at the hands of the family of the prosecuting witness and had given to the members of such family many other presents.

4. PREPONDERANCE OF EVIDENCE—*when instruction upon, not proper.* An instruction is not proper which is to the general effect that if the prosecuting witness had testified that the defendant was the father of her child and he had testified that he was not and they were both equally credible and neither was corroborated more than the other, then the evidence was equally balanced, and they should find the defendant not guilty.

5. BASTARDY PROSECUTION—*particular instruction in, not error.* An instruction in such a case which begins thus: "The jury are instructed that if you find from the evidence in this case that the prosecuting witness has testified that the defendant is the father of her bastard child, but that defendant has denied the same, still from this fact alone you are not to say that the evidence is evenly balanced,

Leek v. The People.

and not preponderating in favor of either party," held inaccurate, but cured by other instructions given.

Bastardy proceeding. Appeal from the County Court of Mercer County; the Hon. William T. Church, Judge, presiding. Heard in this court at the April term, 1904. Affirmed. Opinion filed March 8, 1905.

Connell & Thomason, for appellant.

William J. Graham, State's Attorney, and McArthur & Cooke, for appellee.

Mr. Justice Dibell delivered the opinion of the court.

Thomas Leek appeals from a judgment of the court below in a bastardy proceeding wherein he was adjudged to be the father of the bastard child of Grace Tary. Grace Tary is the daughter of John and Sarah Tary. Leek married another daughter of the Tarys, and lives about six miles from their home. Mrs. Leek gave birth to a child May 20, 1902. In the latter part of the preceding March Mr. and Mrs. Leek were at the home of her parents and on their return to their own home took Grace with them. She went to her sister's to assist in the housework. Grace remained at the Leeks till April 13th, and then went home. She returned to the Leeks either once or twice before the birth of Mrs. Leek's child, and was there when that child was born. It is a disputed question whether she remained there a long time or whether she returned to her home soon after the birth of her sister's child. The evidence for the People tends to show that she spent the greater part of May, June and July at the Leek home. Grace gave birth to an illegitimate child on March 11, 1903. The attending physician testified that it was a fully developed child and under the proofs the usual period of gestation would bring its conception at about June 4th or June 5th a period when, according to defendant's testimony, Grace was not at his home at all. Grace testified she had intercourse with her brother-in-law first at the barn during the first stay at his house, and thereafter very frequently and as often as once a week when she was there, until the

last time, at night, on the couch upon which she slept in the dining room, during her last stay at the house.

Grace was about eighteen years old when she testified, and was therefore between sixteen and seventeen when the child was begotten. She was to some extent mentally defective. She had been to school in her childhood very little because of her mental condition. She had nearly always lived at home. She had not been accustomed to go out in society with young people; she had never received the attention of any man, and her direct and cross-examination shows that her mind moved very slowly. Her mother testified that Grace could understand if you gave her time to think, and this was manifest in her examination as a witness. Many questions put to her remained unanswered, and after several unanswered questions had been put she would frequently answer the third or fourth preceding question, showing that her mind had been slowly working upon the subject-matter of the earlier question, and in some instances we find that she would next answer the question next following the one just answered. The most serious questions presented by this appeal are whether she has sufficient mental power so that her testimony can be depended upon as the testimony of an ordinary witness would be; whether the cause of defendant was prejudiced by the leading questions put to her by the prosecution; and whether defendant was harmed by her failure to answer questions propounded to her. We have given to her testimony the most careful attention, and have read and re-read it in the record, so as to be able to understand, as nearly as an appellate tribunal can, all that occurred during her examination. From the consideration thus given to her testimony we conclude that no serious prejudicial error occurred during her examination. The prosecution had quite as much difficulty in obtaining answers from her as did the defense. We find that the material features of her testimony were given either in response to questions that were not leading or to questions slightly leading in character to which no objection was interposed. The leading questions to which de-

fendant chiefly objects in argument, were but a repetition of matter concerning which she had already testified in answer to questions which had not been objected to. Except in a very few instances, defendant did not insist upon the witness answering the questions propounded by his counsel, but, upon her failing to answer, defendant's counsel proceeded to put another question, and then another and another, without calling upon the court to require the witness to answer, or obtain any ruling from the court, or taking any exception to any ruling of the court on that subject or to her failure to answer. We think it a reasonable conclusion from the record that defendant's counsel were content with placing the prosecuting witness in the position of not answering a large number of questions. Defendant did not obtain any rulings by the court upon the failure of Grace to answer questions, or preserve any exceptions thereto. The most that he can be heard to say, as the record reads, is that full credence should not be given to her testimony because of her failure to answer many questions. It is evident the witness could not give dates or figures. She, however, distinctly and definitely and repeatedly testified to the intercourse with her brother-in-law at the barn during her first visit there, and on the couch in the night during her last visit, and to the fact that intercourse took place repeatedly between those times when she was at her brother's house, and that he was the father of her child, and that she had never had intercourse with any other man. Defendant testified that he never had intercourse with the girl, and was not the father of the child. In the main neither had any particular corroboration or contradiction, except that the testimony of defendant is that Grace was not at his house from May 24th till about the first of July, in which respect he is contradicted not only by Grace but also by her mother, who places Grace at the Leeks most of the time during the months of May and June. In such a state of the proofs it does not follow that the evidence is evenly balanced or that the jury should have found for defendant. There may have been that in the demeanor of Grace and Leek on

the witness stand which justified the jury in believing that Grace was telling the truth and that the defendant was not. That observation would be equally applicable in behalf of defendant if the jury had found him not guilty. The jury are the final arbiters of questions of fact, and after giving careful consideration to this testimony we conclude that we would not be warranted in saying that the jury erred in deciding the facts and ought to have found the defendant not guilty. It may be he is not guilty, and any man against whom such a charge is made under circumstances where he has had the opportunity to commit the offense is unquestionably in a serious situation. It is also true that a young woman of defective mental condition, slight education and little experience in the world, might easily fall a victim to a member of the family whom she trusted.

On the cross-examination of Grace it was elicited from her that Addison Irwin, a bachelor forty-eight years old, who worked about the country, and when not employed made his home at John Tary's, had made Grace a present of a suit of underwear. The court thereupon permitted the People to prove by Grace and by other members of the family that Irwin had also bought a pair of trousers for a brother of Grace, a pair of overshoes and a dress for Mrs. Tary, a suit of underclothes for the father, a ring for Mrs. Dunn and another for Mrs. McCaw, daughters of John Tary, and perhaps an article or articles for Mrs. Fuller, another daughter, and had bought groceries for the family at different times. Defendant objected to the introduction of this testimony, and insists that this was serious error. The inference which the defendant would naturally seek to draw before the jury, and does seek to draw in this court, from the fact that Irwin had bought Grace a suit of underwear, is that he knew she needed such a suit and must have ascertained that fact from an unlawful familiarity with her, indicative of sexual intercourse. In our opinion it was competent for the prosecution to seek to avoid the force of that inference by showing numerous other like gifts to the various members of John Tary's family. The proof showed that, ever

since the death of Irwin's mother some years before, he had been permitted to make his headquarters and home at John Tary's when he was not employed elsewhere, and he was not charged board.  He seems to have made these various gifts to the family from time to time as his own mood suggested, or when he found some article of wearing apparel that could be bought cheaply.  His purpose seems to have been to make a return for the kindness shown him. Both he and Grace testified that he had never had intercourse with her, and that he and she had never conversed upon the subject of her condition, and the tone of her testimony concerning Irwin was calculated to produce the conviction that she was telling the truth.

Defendant requested, and the court refused, several instructions of the general tenor that if Grace had testified that defendant was the father of her child and he had testified that he was not, and they were both equally credible, and neither was corroborated more than the other, then the evidence was equally balanced and they should find the defendant not guilty.  This form of instruction was condemned in Johnson v. People, 140 Ill. 350.  Defendant requested and the court refused to give an instruction which, among other things, said that defendant's interest in the outcome of the case was equal to, but no greater than, that of the prosecuting witness.  It is urged that it was error to refuse this instruction, especially in view of an instruction given for plaintiff which told the jury, among other things, that they should consider defendant's interest in the result of the case as affecting his credibility.  We are of opinion that the instruction in question was properly refused, and that it would have been improper for the court to tell the jury that the interest of the two parties was equal.  Defendant might have asked, and the court undoubtedly would have given, an instruction directing the jury to consider the interest of the respective parties in passing upon the weight to be given to their testimony.  But such an instruction was not asked. Another instruction given for plaintiff told the jury that

in determining on which side the preponderance of the evidence was they should take into consideration, among other things, the interest or lack of interest of the witnesses in the event of the suit. We think the jury were sufficiently instructed upon that subject. Several of these instructions requested by defendant and refused are covered sufficiently by instructions that were given. The first part of the tenth instruction given for the plaintiff was not entirely accurate. It began as follows: "The jury are instructed that if you find from the evidence in this case that the prosecuting witness has testified that the defendant is the father of her bastard child, but that defendant has denied the same, still from this fact alone you are not to say that the evidence is evenly balanced and not preponderating in favor of either party." There might be circumstances under which, in such a state of the case, the jury could properly find the evidence evenly balanced and not preponderating in favor of either party. The instruction should have said that from that fact alone the jury were not required or compelled to say that the evidence was evenly balanced or that that conclusion did not necessarily follow; but in our judgment this defect was cured by the rest of the instruction, wherein the jury were told that they were the judges of the credibility to be given to the various witnesses and might believe one witness and disbelieve another if from all the facts and circumstances proven they believed one witness testified truthfully and another falsely. The sixth instruction given for plaintiff also told the jury that the testimony of one credible witness might be entitled to more weight than the testimony of many others, under circumstances stated at length in the instruction. We conclude that there is no substantial and reversible error in the rulings of the court upon the instructions, and that we are not warranted in disturbing the verdict of the jury, approved by the trial judge. The judgment is therefore affirmed.

*Affirmed.*